## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RING STREET, LLC** | **CIVIL ACTION NO.:** |
| **PLAINTIFF,** | |
| **VERSUS** | **JUDGE:** |
| **CYPRESS CONNECTS LLC, CHRISTOPHER BEACHER, AND STUART SAUBER,** | **MAGISTRATE:** |
| **DEFENDANTS** | |

---

### VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

This civil action brought by Plaintiff, Ring Street, LLC ("Ring Street"), arises out of the misappropriation of its confidential information and trade secrets by Defendants Cypress Connects LLC ("Cypress Connects"), Christopher Beacher, and Stuart Sauber. Ring Street seeks damages and injunctive relief under the Defend Trade Secrets Act, 18 U.S.C. § 1125 *et seq.*, the Louisiana Uniform Trade Secrets Act, La. R.S. 51:1431 *et seq.*, the Louisiana Unfair Trade Practice Act, La. R.S. 51:1401 *et seq.*, the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*, and for breaches of fiduciary duty, conversion, civil conspiracy, and unjust enrichment.

### <u>PRELIMINARY STATEMENT</u>

Ring Street unknowingly had two foxes in its henhouse. Two of its former trusted employees—who had access to Ring Street's entire computer network and were entrusted with the responsibility of maintaining it—misappropriated Ring Street's confidential information and trade secrets. They used their sophisticated knowledge of computing systems to steal Ring Street's

1

protected information, while hiding their tracks, all in order to start a direct competitor—Cypress Connects—and strategically poach Ring Street's customers. Importantly, this is not a case of former employees merely preparing to compete and then executing on a plan, post-separation, to lawfully do so. Rather, this is case where two former employees used deceit to mislead their employer and, separately, exploited their positions of trust to transfer volumes of protected information, all in an effort to minimize start-up costs and maximize profits at their new venture.

## **PARTIES**

1.

Ring Street is a Louisiana company that maintains its principle place of business at 202 N. I-10 Service Road E., Metairie, LA, 70005, and is registered to do business in Louisiana.

2.

Cypress Connects is a Louisiana company that maintains its principle place of business at 401 Veterans Blvd., Suite 103, Metairie, Louisiana, 7005, and is registered to do business in Louisiana. The registered agent for Cypress Connects is SMD Law, 935 Gravier Street, Suite 1250, New Orleans, LA, 70112.

3.

Christopher Beacher is an individual who is domiciled and resides in New Orleans, Louisiana. He is also member-owner of Cypress Connects.

4.

Stuart Sauber is an individual who is domiciled and resides in Louisiana who is a member-owner of Cypress Connects.

## **JURISDICTION AND VENUE**

2

5.

Jurisdiction is proper under 28 U.S.C. § 1331. The Court also has jurisdiction over Ring Street's state laws claim under 28 U.S.C. § 1367.

6.

Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the events giving rise to this litigation occurred in the jurisdiction of the Eastern District of Louisiana.

## FACTS[1]

### Ring Street's Business, Mr. Sauber and Mr. Beacher's Employment, and their Accesses to Ring Street's Computing Systems

7.

Ring Street provides managed VoIP and IT services that allow small to medium-sized businesses the functionality of a large corporate office without buying and maintaining the hardware or owning the logistics to keep it running and up-to-date. Ring Street provides everything its clients need for sophisticated phone and IT service, and is on-call twenty-four hours a day, seven days a week, to make certain its clients' communications systems are functioning correctly.

8.

Many of Ring Street's customers retain Ring Street to provide both phone *and* IT service, while other customers use Ring Street for only one line of service—phone *or* IT service.

---

[1] The factual allegations contained herein have been verified under oath by either Ring Street's President, Matthew O'Connor, or the third-party forensic expert that Ring Street has retained, Michael Saunders. Mr. O'Connor and Mr. Saunders' verifications are attached hereto as **Exhibits 1** and **2**. Mr. Saunders' CV is attached hereto as **Exhibit 3**.

3

9.

Ring Street formerly employed Defendant Christopher Beacher and Defendant Stuart Sauber.

10.

Ring Street hired Mr. Beacher on August 20, 2019, as a Phone Technician, and his job duties included: answering customer calls; soliciting new business; programming and/or installing phones that Ring Street provided to customers; maintaining and servicing equipment provided to Ring Street's customers. His job responsibilities focused on the phone services line of business.

11.

To perform his job duties as a Phone Technician, Ring Street gave Mr. Beacher access to its computer systems, on which Ring Street stores its confidential information and trade secrets.

12.

This access included Ring Street's: Office 365 platform; SharePoint platform; One Drive; shared drives; phone system portal, referred to as Yealink Management Cloud Service ("YMCS"); as well as "Keeper Security," a data repository that protects and stores credentials for customers, vendors, and internal operations.

13.

Ring Street hired Mr. Sauber on March 9, 2020, as its Information and Technologies Director, and his job duties included: managing and coordinating the entire IT department staff; managing Ring Street's network and all of its IT services; coordinating customer projects, including managing and implementing customers' IT services; and developing customers' IT policies and procedures.

14.

Mr. Beacher's job responsibilities focused on the phone services component of Ring Street's business.

15.

As IT Director, Mr. Sauber was responsible for developing and maintaining Ring Street's own internal network, email, file storage, and data transfer systems, as well as servicing Ring Street's customers' IT needs.

16.

To perform his job duties as IT Director, Ring Street likewise gave Mr. Sauber access to its computer systems, on which Ring Street stores its confidential information and trade secrets.

**_Ring Street's Computing Systems and the Protected Information Stored on it_**

17.

Ring Street's computer systems include, for instance, its SharePoint platform and Office 365 platform, both of which contain customer pricing information, customer lists and contact information, customer renewal date information, customer contracts, customer invoices, historical sales and revenue data, as well as company-wide and customer-specific profit and loss data.

18.

As other examples, Ring Street's systems include its YMCS platform, which contains highly particularized and specific information about customers' service and equipment needs, as well as "Keeper Security," which houses confidential credentials necessary to maintain services for Ring Street's internal operations and for its vendors and customers.

5

19.

These computing systems, which were to be used only for legitimate business purposes, and the confidential and proprietary information stored on them (whether it be discrete pieces of information or the universe of information as a whole) give Ring Street an advantage over its competitors, and this confidential and proprietary information was created, developed, and/or compiled over the course of many years, requiring considerable time and expense.

20.

Access to these aspects of Ring Street's computing systems is provided to Ring Street employees on a need-to-know basis, and, in many instances, are password protected. Ring Street's employees—including Mr. Beacher and Mr. Sauber—are instructed, consistent with basic common sense, to use Ring Street's computing systems only for Ring Street's benefit and to keep confidential the sensitive information they house.

21.

During the course of their employment with Ring Street, Mr. Beacher and Mr. Sauber received access to confidential business information and trade secrets to perform work for customers throughout Louisiana (for IT services) and the United States (for phone services), including access to the foregoing computing systems and information on them regarding: (a) Ring Street's products, services, finances, marketing plans, suppliers, customers, strategic plans, price quotations to customers, methods of service, and actual pricing that Ring Street charged certain customers for various goods and services; (b) the content of existing contracts that Ring Street has with its customers; (c) quotes to customers (which contained not only the pricing but also the identities and contact information for those persons employed by customers who make decisions

6

on whether to enter into contracts with Ring Street); (d) details regarding a customer's needs and specifications; and (e) the identities of the vendors that Ring Street has located and used over the years to provide the type and quality of products and services needed to timely and sufficiently fulfill obligations to customers.

### Unexpected Departures, Unlawful Competition, and a Preliminary Internal Audit of Computing Misconduct

22.

Mr. Beacher unexpectedly gave his two weeks' notice to Ring Street on or around November 9, 2022, and his last day of employment with Ring Street was November 23, 2022.

23.

At the time of his resignation, Mr. Beacher told Ring Street that he did not know his future employment plans, and he stated that he wanted to do some traveling and then figure out what he wanted to do about his career.

24.

Mr. Sauber likewise unexpectedly announced his intent to resign in early December, offering to stay on for an additional two weeks.

25.

Unlike Mr. Beacher, however, when Mr. Sauber provided his two weeks' notice, he told Ring Street that he planned to transition customers and vendors to a new company that he intended to create.

#101200336v20

26.

Mr. Sauber memorialized his plans in a document he provided to Ring Street titled "Stuart Transition Plan," wherein he set forth his plans to start a "new company" whose name he claimed was still "to be determined."

27.

The "Stuart Transition Plan" document sets forth a plan to, during Mr. Sauber's proposed two weeks' notice period, seamlessly transfer customers whom he had serviced as a Ring Street employee to his new entity, while using Ring Street's resources and confidential information to do so.

28.

Mr. Sauber even went so far as to compile a list of Ring Street's customers whom he apparently believed he was entitled to divert to his new entity, using the intimate knowledge of those customers' needs that he had gained through his status as a Ring Street employee. A true and correct copy of the "Stuart Transition Plan" document, together with the referenced customer list, is attached hereto as **Exhibit 4**.[2]

---

[2] The names of customers are redacted.

#101200336v20

29.

After being provided with the "Stuart Transition Plan" document on December 7, 2022, Ring Street terminated Mr. Sauber's employment, and his last day with Ring Street was Friday, December 9, 2022.

30.

Ring Street has since learned that Mr. Beacher and Mr. Sauber **collaborated in secret long before their resignations** to jointly create a direct competitor, Cypress Connects, as that new entity's co-owners and members.

31.

Indeed, Ring Street discovered during an internal audit of its computer systems that, **on October 13, 2022**, the domain name that Cypress Connects uses for its business—www.cypressconnects.com—was secretly purchased by Mr. Sauber while he was still employed by Ring Street.[3]

32.

It is therefore clear that Mr. Sauber intentionally misled Ring Street when he claimed in early December—verbally and in writing—that he did not yet know the name of the entity through which he intended to compete against Ring Street.

---

[3] A Louisiana Secretary of State filing indicates that Cypress Connects filed to become a Louisiana company on Monday, December 12, 2022, *i.e.* the first business day after Mr. Sauber's separation. In addition to what is included in the body of the Complaint, Ring Street's internal audit also uncovered the following facts: Cypress Connects SharePoint was accessed on Ring Street company equipment on November 6, 2022; the company telephone number for Cypress Connects was setup on or before November 21, 2022; and the Office 365 account for Cypress Connects was accessed on November 28, 2022.

33.

On or around the same day as Mr. Sauber's separation—alarmed by Mr. Sauber's stated intentions as set forth in the "Stuart Transition Plan" document—Ring Street provided Mr. Sauber with a cease and desist letter that instructed him not to retain or use its confidential information and trade secrets, to return any such information in his possession, and not to interfere with Ring Street's customer relationships through exploitation of such information.

34.

Mr. Sauber ignored Ring Street's cease and desist letter and offered no response; at that time, however, Ring Street was unaware of any suspicious computing activity, described *infra*, that Mr. Sauber and Mr. Beacher secretly undertook and/or took steps to conceal.

35.

In March of 2023, around three months after their resignations, Ring Street began to notice, for the first time, suspicious unauthorized computing activity related to Mr. Beacher and Mr. Sauber—activity that they had secretly taken and even took active steps to conceal.

36.

Ring Street promptly initiated an internal audit of its computer systems to determine whether—and to what extent—any unlawful conduct had occurred or was ongoing.

37.

During this early internal audit, Ring Street learned that, while Mr. Sauber was still a Ring Street employee, and just days before his eventual separation, he secretly shared confidential Ring Street data with Mr. Beacher through Mr. Beacher's new Cypress Connects email address:

10



38.

Given this early collaboration on Cypress Connects, it appears that Mr. Beacher also misled Ring Street when he claimed, at the time he announced his intent to resign, that he did not know his future employment plans.

39.

Ring Street's early internal audit revealed that the night before his separation, Mr. Sauber secretly exported volumes of records housed in "Keeper Security"—which, again, contains credentials to access Ring Street's key internal, customer, and vendor accounts—to a .csv file.

40.

Ring Street also learned during its early internal audit that Mr. Sauber and Mr. Beacher were secretly accessing, without authorization, Ring Street's computing systems **even though they were no longer employed** (in fact, it was this clandestine log-in activity, which Ring Street discovered, that triggered its internal audit).

41.

**The day after his separation**, for example, Mr. Sauber deleted, without authorization, nine or more records on his "Keeper Security" portal, including records related to Cypress Connects.[4]

42.

Ring Street's early internal audit of its computer systems further demonstrated that Mr. Sauber accessed Ring Street's "Keeper Security" platform dozens of times on the day his employment was terminated.

43.

Potentially more troubling, Ring Street uncovered that Mr. Beacher has secretly accessed its YMCS platform, without authorization, **at least four times since his separation**, including on December 7, 2022; February 1, 2023; February 24, 2023; and March 17, 2023.

44.

Ring Street's YMCS platform is highly important in this context: it can function as a *de facto* customer list, as it contains information on Ring Street's existing customers, which is

---

[4] Furthermore, on December 7, 2022, Mr. Sauber deleted the "Keeper Security" user profile for Chris Beacher.

constantly being updated as Ring Street adds new customers to the YMCS platform in the ordinary course of business.

45.

Ring Street has since learned that Mr. Beacher, while surreptitiously snooping in its YMCS platform, accessed data related to customers that have ceased doing business with Ring Street (including one customer who had been with Ring Street for over a year) in order to transfer their business to Cypress Connects.

46.

Through Ring Street's YMCS platform, Mr. Beacher is easily able to copy and paste device configurations back-up logs containing configuration data for each of Ring Street's customers, which, in turn, enables Cypress Connects to replicate customers' existing phone systems without having to carry out much of its own leg work.

***Ring Street Quickly Suffers Large and Unexpected Losses***

47.

Following their separations and as Ring Street was performing its internal audit, Mr. Beacher and Mr. Sauber had begun to perform the same job duties and services on behalf of Cypress Connects—while in possession of and accessing Ring Street's confidential information and trade secrets—that they provided while employed by Ring Street.

48.

As Ring Street began to uncover evidence of Mr. Beacher and Mr. Sauber's wrongdoing, and shortly after their apparent coordinated resignations, Ring Street began losing customers to Cypress Connects with whom it had long-standing service relationships.

13

49.

Ring Street reasonably expected that these customers would continue to renew their business with Ring Street based on service history and the lack of any meaningful customer complaints.

50.

Specifically, Ring Street lost approximately $510,000.00 in annual revenue in just the six-month period following Mr. Beacher and Mr. Sauber's coordinated and abrupt separations.

51.

To date, Ring Street has lost approximately thirty-five customers to Cypress Connects since Mr. Beacher and Mr. Sauber's separations, ***including more than half*** of Ring Street's customers for whom it provided IT services with the assistance of Mr. Sauber.

52.

Ring Street learned from some of its then-former customers that they left (or were leaving) Ring Street in order to bring their business to Cypress Connects.

53.

Many IT customers that unexpectedly stopped doing business with Ring Street received emails from Cypress Connects asking them to transition services away from Ring Street, and phone customers sent similarly worded cancellation emails providing 30 days' notice and expressing an understanding that certain equipment would be returned to Ring Street.

54.

Further, it is uncommon for customers to be unilaterally aware of Ring Street's 30-day contractual notice provision, and it is also uncommon for customers to raise on their own the issue

#101200336v20

of returning Ring Street's equipment (with many customers believing that such equipment belongs to them).

### Ring Street's Forensic Examinations Uncovers More Evidence of Egregious Unethical Conduct

55.

Ring Street—further alarmed by the success rate and speed with which Cypress Connects was poaching its customer-base—hired a third-party forensic examiner to uncover the extent to which Cypress Connects (acting through Mr. Beacher and Mr. Sauber) engaged in unfair competition to grow its business at an otherwise unattainable speed and success rate.

56.

During the course of its investigation, Ring Street discovered that Mr. Beacher had been routinely accessing its YMCS platform, while Mr. Sauber had accessed his "Keeper Security," *after* their separations without Ring Street's express or implied authorization.

57.

Mr. Beacher and Mr. Sauber did not have permission to secretly access these applications following their resignations, and they did not have permission to secretly access these computing tools *in order to establish a direct competitor, misappropriate information, and poach Ring Street's customers for their own and Cypress Connects' benefit*.

58.

Discovery of Mr. Beacher and Mr. Sauber's clandestine, unauthorized access of "Keeper Security" and the YMCS platform prompted Ring Street to do the following: delete Mr. Beacher and Mr. Sauber's access credentials; further forensically investigate whether Mr. Beacher and Mr.

15

Sauber engaged in other unlawful conduct; and, once sufficient evidence was uncovered, to file this lawsuit seeking damages and emergency injunctive relief to protect its stolen information.

59.

While Ring Street's third-party forensic examination remains ongoing, it has already confirmed that Mr. Beacher and Mr. Sauber transferred large amounts of its confidential information and trade secrets to personal devices and/or accounts shortly before their separations, including through use of capabilities that Ring Street was not aware Mr. Sauber had created on its computing systems.

60.

The third-party forensic examination has revealed that Mr. Sauber—**on the day before** he provided Ring Street with the "Stuart Transition Plan" document and **the day after** he did so— plugged in several different external storage devices into his Ring Street computer:

- A Lexar USB Flash Drive (SN AA6SDCC6IPZDTNT1) was used on December 6, 2022;

- A PNY USB 2.0 FD flash drive (SN 071319EA27745A61)) was used on December 6, 2022;

- A USB SanDisk 3.2Gen1 flash drive (SN 0401f5802779bfd1de2519273fce74eafbe4e8142a2e4d6e98d99d34a c3ff20292d7000000000000000000000f6c7917100050918815581078 e288eef) was used on December 6, 2022.

- PNY USB 2.0FD flash drive (SN 071319EA28535627) was used on December 8, 2022.

16

61.

None of these external storage devices were returned to Ring Street when Mr. Sauber's employment was terminated, nor has Ring Street been able to locate any of them in its offices where Mr. Sauber worked.[5]

62.

In the 90 minute period before the Lexar USB Flash Drive (SN AA6SDCC6IPZDTNT1) device was plugged into Mr. Sauber's work computer on December 6, 2022, he accessed the following files and folders, many of which contain Ring Street's confidential information and trade secrets:

| | | |
|---|---|---|
| 12/6/2022 14:58 | File Opened/Accessed | C:\Users\ssauber\OneDrive - Ring Street LLC\Documents - Ringstreet\Knowledge Base Videos\Create New User (DC).mp4 |
| 12/6/2022 14:58 | File Opened/Accessed | C:\Users\ssauber\OneDrive - Ring Street LLC\Documents - Ringstreet\Knowledge Base Videos |
| 12/6/2022 14:56 | File Opened/Accessed | C:\Users\ssauber\OneDrive - Ring Street LLC\Documents - Ringstreet\Knowledge Base Videos\Revoke A license from Cloud User.mp4 |
| 12/6/2022 14:44 | File Opened/Accessed | C:\Users\ssauber\OneDrive - Ring Street LLC\Documents - Ringstreet\WhatsOnThisJumpDrive.xlsx |
| 12/6/2022 14:11 | File Opened/Accessed | C:\Users\ssauber\OneDrive - Ring Street LLC\Managed Services.docx |
| 12/6/2022 14:10 | File Opened/Accessed | C:\Users\ssauber\OneDrive - Ring Street LLC\Documents - Ringstreet\Clients\MBIA |

---

[5] At least 6 other USB devices were plugged into Mr. Sauber's work computer between August 2022 and December 2022. *None of those devices have been returned*. The foregoing allegation focuses on the 4 external storage devices that were plugged into Mr. Sauber's work computer between December 6, 2022 and December 8, 2022, *i.e.* just days before his separation. Additional forensic analysis is required considering the evidence demonstrate that Mr. Sauber obtained the domain name for Cypress Connects on October 13, 2022, thereby prolonging the period of interest related to suspicious activity.

| 12/6/2022 14:10 | File Modified | C:\Users\ssauber\OneDrive - Ring Street LLC\Documents - Ringstreet\Clients\MBIA |
| 12/6/2022 14:10 | File Opened/Accessed | C:\Users\ssauber\OneDrive - Ring Street LLC\Documents\Extension List_.xlsx |
| 12/6/2022 14:10 | File Opened/Accessed | C:\Users\ssauber\OneDrive - Ring Street LLC\Documents - Ringstreet\Clients\MBIA\MBIA Extension List_.xlsx |
| 12/6/2022 14:08 | File Opened/Accessed | C:\Users\ssauber\OneDrive - Ring Street LLC\Documents\Ernest Service Pricing.xlsx |
| 12/6/2022 14:08 | File Opened/Accessed | C:\Users\ssauber\OneDrive - Ring Street LLC\Documents\EN_RICHARD_WHALEY_102821084601.docx |
| 12/6/2022 14:07 | File Opened/Accessed | C:\Users\ssauber\OneDrive - Ring Street LLC\Documents\RS Current Service Pricing.xlsx |
| 12/6/2022 14:06 | File Opened/Accessed | C:\Users\ssauber\OneDrive - Ring Street LLC\Documents\RS Service Pricing 2022 (TEMPLATE).xlsx |

63.

Right after he plugged in a PNY USB 2.0 FD flash drive (SN071319EA28535627) to his Ring Street work computer, Mr. Sauber accessed, opened, and/or modified data in the following files and folders, some of which include Ring Street's confidential information and trade secrets:

| 12/6/2022 18:23 | File Opened/Accessed | C:\Users\ssauber\OneDrive - Ring Street LLC\Documents - Ringstreet\Sonicwall Firmware |
| 12/6/2022 18:23 | File Modified | C:\Users\ssauber\OneDrive - Ring Street LLC\Documents - Ringstreet\Sonicwall Firmware |
| 12/6/2022 18:23 | File Opened/Accessed | C:\Users\ssauber\OneDrive - Ring Street LLC\Documents - Ringstreet\Sonicwall Firmware\sw_nsa-3600__eng_6.5.4.10-95n.sig |
| 12/6/2022 18:23 | File Modified | C:\Users\ssauber\OneDrive - Ring Street LLC\Documents - Ringstreet\Sonicwall Firmware |
| 12/6/2022 18:23 | File Opened/Accessed | C:\Users\ssauber\OneDrive - Ring Street LLC\Documents - Ringstreet\Sonicwall Firmware |
| 12/6/2022 18:23 | Directory Created | Shared Documents Folder (Users Files)\OneDrive - Ring Street LLC\Documents - Ringstreet\Sonicwall Firmware |
| 12/6/2022 18:23 | File Created | C:\Users\ssauber\OneDrive - Ring Street LLC\Documents - Ringstreet\Sonicwall Firmware |
| 12/6/2022 18:23 | File Created | C:\Users\ssauber\OneDrive - Ring Street LLC\Documents - Ringstreet\Sonicwall Firmware |

| | | |
|---|---|---|
| 12/6/2022 18:05 | File Opened/Accessed | C:\Users\ssauber\OneDrive - Ring Street LLC\Documents - Ringstreet\Clients\PriorityFloors\!General Info, logins, etc.doc |
| 12/6/2022 18:05 | File Opened/Accessed | C:\Users\ssauber\OneDrive - Ring Street LLC\Documents - Ringstreet\Clients\PriorityFloors |

64.

And in the nine days preceding his separation, during which Mr. Sauber could have been (and, based on the timing and circumstances, appears likely to have been)transferring data to external storage devices and/or accounts, Mr. Sauber accessed the following files on a One Drive Account, including customer and contact lists and customer contracts:

- TTT_The-IT-Partner-Agreement.docx

- AdeptCloud.pdf

- What can Matt do.docx

- EDGE_CIS_RAM_for_IG1_Workbook_v21.10.27.xlsx

- Stuart Transition Plan.docx

- Standard Client Setup.xlsx

- PHI Device Destruction v1.0.xlsx

- Keeper Invoice T4KJI-075898403.pdf

- invoice-35664284.pdf

- Contract and SLA Worksheet.xlsx

- 2022 DR checklist.xlsx

- Syncro monthly recurring invoicing 2022(3).xlsx

- RingStreet_INV02779705_2022-Aug-08.pdf

- RingStreet_INV02817591_2022-Sep-08.pdf

- RingStreet_INV02854716_2022-Oct-08.pdf

- RingStreet_INV02891921_2022-Nov-08.pdf

- Customer Contracts.xlsx

- contacts.xlsx

65.

A third-party forensic examination of the Ring Street computer issued to Mr. Beacher has likewise yielded similarly troubling findings.

66.

***On his last day of employment*** (at the end of his two-week notice period) with Ring Street, Mr. Beacher plugged in a Kingston DataTraveler 3.0 USB Device (SN 50E549C3443AB031C9BDEEB5) that has not been returned and that Ring Street has been unable to locate.

67.

In the hour or so after Mr. Beacher plugged in this device, he accessed, opened, and/or modified data—and created files—from the following files and folders, many of which contain Ring Street's confidential information and trade secrets:

| 11/23/2022 18:48 | Disconnect | |
|---|---|---|
| 11/23/2022 18:45 | File Opened/Accessed | E:\RS FIrefox\bookmarks-2022-11-23.json |
| 11/23/2022 18:41 | File Opened/Accessed | E:\Chrome Passwords 11-22.csv |
| 11/23/2022 18:41 | File Modified | E:\New folder |
| 11/23/2022 18:27 | File Opened/Accessed | E:\Legacy Investment Strategies |
| 11/23/2022 18:27 | Directory Interaction | My Computer\E:\Legacy Investment Strategies |

| | | |
|---|---|---|
| 11/23/2022 18:27 | File Opened/Accessed | E:\Legacy Investment Strategies\Quotation 40-1.pdf |
| 11/23/2022 18:26 | File Created | E:\Legacy Investment Strategies |
| 11/23/2022 18:21 | File Opened/Accessed | C:\Users\cbeacher\Downloads\Vendors Login.xlsx |
| 11/23/2022 18:19 | Directory Interaction | My Computer\Documents\Custom Office Templates |
| 11/23/2022 18:18 | File Created | C:\Users\cbeacher\Downloads\Vendors Login.xlsx |
| 11/23/2022 18:05 | File Opened/Accessed | C:\Users\cbeacher\Downloads\logins.csv |
| 11/23/2022 18:03 | Directory Interaction | My Computer\Z:\ADConnect |
| 11/23/2022 18:03 | Directory Interaction | My Computer\Z:\ND\NetworkDetective-ringstreet.local-20200504.zip |
| 11/23/2022 18:03 | File Opened/Accessed | Z:\ND\NetworkDetective-ringstreet.local-20200504.zip |
| 11/23/2022 18:03 | Directory Interaction | My Computer\Z:\Quickbooks\2012 |
| 11/23/2022 18:03 | Directory Interaction | My Computer\Z:\Quickbooks\2016 |
| 11/23/2022 18:03 | Directory Interaction | My Computer\Z:\Quickbooks\2021 |
| 11/23/2022 17:54 | Directory Interaction | My Computer\Z:\DRAGON |
| 11/23/2022 17:54 | Directory Interaction | My Computer\Z:\Brother |
| 11/23/2022 17:50 | Directory Interaction | My Computer\S:\Ring Street\Customers\Zeas\Zea Lafayette |
| 11/23/2022 17:49 | Directory Interaction | E:\Screenshot\Mid City PT + Wellness |

68.

Forensic analysis of Mr. Beacher's computer shows that he also plugged in two other external storage devices into his Ring Street work computer on October 14, 2022, which was the day after Mr. Sauber obtained (unbeknownst to Ring Street) the domain name for Cypress

Connects. Forensic analysis also shows computing activity that took place on November 8, 2022, *i.e.*, the day before Mr. Beacher gave his two weeks' notice. On that date, he accessed a large number of files containing Ring Street's business information, including files with "invoice" in the file name, while using the unreturned Kingston DataTraveler 3.0 USB Device. Two file paths that Mr. Beacher accessed at that time included "My Computer\E:\CC\Blue Oak" and "E:\CC\Ingram Micro Invoices."

69.

Mr. Beacher and Mr. Sauber are currently competing against Ring Street while in possession of, using, and/or disclosing — for their own and Cypress Connects' benefit — Ring Street's confidential information and trade secrets, which they unlawfully accessed *after* their separation and which they unlawfully transferred *before their separation*, all in order to unfairly target and solicit Ring Street's customers.

70.

Further, Ring Street's third-party forensic analysis revealed other highly suspicious computing activity about which Ring Street intends to depose Mr. Sauber, including high-level deletion activity, uploading software to allow remote connections to computers and make bootable USB drives, as well as access to an Outlook Web Access email account with the username ssauber@cypressconnects.com that started *as early as November 6, 2022*.

71.

In addition to the foregoing, Ring Street's ongoing internal audit has revealed that Mr. Sauber created private communication channels on SharePoint and/or Microsoft Teams so that he and Mr. Beacher could plan, communicate, and/or share information directly without Ring Street's

#101200336v20

knowledge, even though there appears to have been no legitimate business purpose to have done so.

72.

Most recently, Ring Street  discovered (in the week before filing suit) through its ongoing internal audit that Mr. Sauber and/or Mr. Beacher accessed its HostGator.com platform (another computer system Ring Street uses to provide IT services), without Ring Street's authorization, using credentials provided to them while they were Ring Street employees.

73.

Once inside Ring Street's HostGator.com platform, Mr. Sauber and/or Mr. Beacher activated a domain for a customer that Ring Street had stopped servicing because the customer ended its relationship with Ring Street.

74.

And even more recently (the week this suit was filed), Ring Street pieced together additional compelling evidence demonstrating that Mr. Sauber abused his position of IT Director to engage in, and hide, his unlawful conduct.

75.

That is, on October 12, 2022, Mr. Sauber created a new office@ringstreet.net user account as Ring Street's SharePoint "admin," and, around the same time, he changed coding in SharePoint's application programming interface ("API") to add a value called "user_impersonation":[6]

---

[6] Though this allegation rests on strong circumstantial evidence, it is worth noting that Mr. Sauber was the only Ring Street employee who would have had the knowledge and/or reason to create this new user account.

#101200336v20

```
9     "oauth2AllowUrlPathMatching": false,
10    "createdDateTime": "2022-05-23T14:47:44Z",
11    "description": null,
12    "certification": null,
13    "disabledByMicrosoftStatus": null,
14    "groupMembershipClaims": null,
15    "identifierUris": [
16        "https://secure.ringstreet.com/baf95102-12a0-4ee1-81c6-659229faec7d"
17    ],
18    "informationalUrls": {
19        "termsOfService": null,
20        "support": null,
21        "privacy": null,
22        "marketing": null
23    },
24    "keyCredentials": [],
25    "knownClientApplications": [],
26    "logoUrl": null,
27    "logoutUrl": "https://portal.office.com",
28    "name": "SharePoint Application",
29    "notes": null,
30    "oauth2AllowIdTokenImplicitFlow": true,
31    "oauth2AllowImplicitFlow": false,
32    "oauth2Permissions": [
33        {
34            "adminConsentDescription": "Allow the application to access SharePoint Application on behalf of the signed-in user.",
35            "adminConsentDisplayName": "Access SharePoint Application",
36            "id": "1e059f17-a5db-4f67-899b-57cab096b32a",
37            "isEnabled": true,
38            "lang": null,
39            "origin": "Application",
40            "type": "User",
41            "userConsentDescription": "Allow the application to access SharePoint Application on your behalf.",
42            "userConsentDisplayName": "Access SharePoint Application",
43            "value": "user_impersonation"
44        }
```

76.

On December 5, 2022, Mr. Sauber used the new office@ringstreet.net user account to access customer "run books," ***confidential files which are never shared*** except when a customer ends its service relationship with Ring Street (at which time such files are provided to the customer).

77.

There was absolutely no legitimate business purpose for Mr. Sauber to secretly create a new user profile and/or to access these "run book" files in the days preceding his separation.

24

78.

Mr. Beacher and Mr. Sauber have sophisticated training with electronic systems and maintained positions of trust and confidence with Ring Street, and, as such, they certainly knew that transferring Ring Street's information prior to their separations in order to compete against it, as well as accessing Ring Street's computer tools following their separation in order to compete against it, was grossly unethical, and, in fact, unlawful under the circumstances.

**RELIEF SOUGHT**

**COUNTS ONE AND TWO**
**(Against All Defendants)**
*Violations of the Defend Trade Secrets Act ("DTSA") and*
*Louisiana Uniform Trade Secret Act ("LUTSA")*

79.

Ring Street repeats and re-alleges each and every allegation made in the previous paragraphs as if fully rewritten herein.

80.

Mr. Beacher and Mr. Sauber surreptitiously misappropriated Ring Street's confidential business information when they used unreturned external storage devices and/or cloud-based accounts to transfer information—which is not generally known to the public—from Ring Street's Office 365 and SharePoint platforms and retain it for use on behalf of themselves and Cypress Connects.

81.

Mr. Beacher and Mr. Sauber also surreptitiously misappropriated Ring Street's confidential business information when they accessed, without authorization, Keeper Security and Ring Street's

25

YMCS platform (before and after their separations) in order to use information contained therein—which is not generally known to the public—to directly compete against Ring Street.

82.

This confidential business information includes trade secrets under the DTSA and LUTSA, as it consists of valuable pricing information, customer contact information, and detailed product information on a customer-by-customer basis that, together, is necessary for Ring Street to maintain a leading market share and competitive advantage. *See, e.g., Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Davis*, No. 98-2861, 1998 U.S. Dist. LEXIS 20674, at *3-6 (N.D.Tex. Dec. 31, 1998); *360 Morg. Grp., LLC v. HomeBridge Fin. Servs.*, No. 14-00847, 2016 U.S. Dist. LEXIS 25652, at *13-14 (W.D.Tex. March 2, 2016); *Complete Logistical Servs., LLC v. Rulh*, 350 F. Supp. 3d 512, 518-19 (E.D.La. 2018); *Brock Servs. v. Rogilio*, No. 18-867, 2019 U.S. Dist. LEXIS 231954, at *16-21 (M.D.La. June 17, 2019); *MMR Constructors, Inc. v. JB Grp. of LA, LLC*, No. 22-00267, 2022 U.S. Dist. LEXIS 76494, at *8-19 (M.D.La. April 26, 2022).

83.

Further, the amalgamation of discrete pieces of information into an easy-to-use and digestible format—which, as examples, Share Point, Keeper Security, and Ring Street's YMCS platform provide—is valuable in and of itself, and these computing tools increase Ring Street's chances of winning and maintaining business.

84.

Mr. Beacher and Mr. Sauber used and disclosed Ring Street's trade secrets to compete against Ring Street for the benefit of themselves and Cypress Connects, and, considering Mr.

Beacher and Mr. Sauber are the owner-members of Cypress Connects, they necessarily did so with the approval of Cypress Connects and/or their misconduct is imputed to Cypress Connects.

85.

Upon information and belief, and though Mr. Beacher and Mr. Sauber's access to the Keeper Security and the YMCS platform have since been discontinued, Mr. Beacher and Mr. Sauber have used and continue to use Ring Street's trade secrets (including those transferred using Share Point before their separations) by marketing and selling throughout the United States, including in Louisiana, products and services using Ring Street's trade secrets, without Ring Street's consent, while knowing or having reason to know that such information was acquired by improper means and/or acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use.

86.

In particular—and armed with Ring Street's playbook—Mr. Beacher, Mr. Sauber, and Cypress Connects have used Ring Street's trade secrets to benefit themselves by quickly establishing a competing entity (while avoiding start-up costs and time delays typically associated with starting a new business) to solicit and induce actual and prospective customers of Ring Street to choose or transfer their business to Cypress Connects, including by marginally undercutting Ring Street's pricing and using Ring Street's non-public knowledge of its customers' unique needs.

87.

Misappropriation of Ring Street's trade secrets and confidential information has allowed Cypress Connects to start and ramp up operations without having to, *inter alia*, make substantial

and otherwise unavoidable upfront investments in licensing agreements, server space, equipment, and marketing.

88.

Ring Street is facing a real threat Mr. Beacher, Mr. Sauber, and Cypress Connects will use, continue to use, and disclose Ring Street's trade secrets to benefit themselves to Ring Street's detriment. Ring Street therefore has suffered and will continue to suffer irreparable harm that cannot be measured in precise monetary damages and is entitled to injunctive relief to prevent further irreparable harm under the DTSA and LUTSA.

89.

The DTSA allows for a private civil action to be brought by the owner of a misappropriated trade secret "if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1).

90.

Ring Street used the misappropriated information to provide services in interstate and global commerce.

91.

Ring Street took reasonable steps to maintain the secrecy of the misappropriated information, namely, information on its computing systems, by limiting its dissemination and by expressly advising its employees, including Mr. Beacher and Mr. Sauber, that such information is confidential and not to be disclosed for any purpose other than authorized business for Ring Street's benefit.

#101200336v20

92.

Mr. Beacher and Mr. Sauber knew that the confidential business information they misappropriated constituted trade secrets and that they were not authorized to possess, use, disclose, transfer, or retain those secrets following their separation from Ring Street.

93.

Cypress Connects likewise knew, or should have known, that the confidential business information belonging to Ring Street that Mr. Beacher and Mr. Sauber brought with them to Cypress Connects was taken without authorization and in violation of their confidentiality obligations to Ring Street that arise as a matter of law.

94.

Mr. Beacher, Mr. Sauber, and Cypress Connects engaged in the misappropriation described above with willful, malicious, and improper motives, and with reckless indifference to Ring Street's rights in the information at issue.

95.

As a direct and foreseeable result of Mr. Beacher, Mr. Sauber, and Cypress Connects' misappropriation, Ring Street has suffered irreparable harm, injuries, and damages, and will continue to suffer irreparable harm, injury, and damages, including but not limited to, loss of relevant market share, injury to business reputation and goodwill, and attorneys' fees and costs. Ring Street is entitled to recover damages, including exemplary damages and attorney's fees, in an amount to be established at trial.

#101200336v20

## COUNT THREE
### (Against All Defendants)
### *Violation of the Louisiana Unfair Trade Practices Act ("LUTPA")*

96.

Ring Street repeats and re-alleges each and every allegation made in the previous paragraphs as if fully rewritten herein.

97.

LUTPA prohibits unfair trade practices, which involve some element of fraud, misrepresentation, deception, or other unethical conduct.

98.

Mr. Beacher, Mr. Sauber, and Cypress Connects, have engaged in false, misleading, deceptive, and/or unethical practices in their unlawful competition with Ring Street.

99.

Specifically, Mr. Beacher, Mr. Sauber, and Cypress Connects have used and continue to use Ring Street's misappropriated confidential and proprietary information, regardless of whether that information rises to the level of a trade secret, and sabotaged Ring Street's customer relationships.

100.

Mr. Beacher and Mr. Sauber carried out their misappropriation of information by breaching their duty of loyalty to Ring Street, including by misleading Ring Street about their post-employment plans, by surreptitiously transferring data prior to their separations, and by accessing Ring Street's computing systems, without authorization or exceeding their authorization, both before and after their separations.

101.

These actions have been taken to benefit Mr. Beacher, Mr. Sauber, and Cypress Connects and to harm Ring Street.

102.

By virtue of Mr. Beacher and Mr. Sauber's owner-member status in their new competing entity, Cypress Connects is aware of, encouraged, and/or engaged in the aforementioned practices, which has allowed, and continues to allow, Cypress Connects to profit unjustly and to cause Ring Street to suffer damages.

103.

The conduct of Mr. Beacher, Mr. Sauber, and Cypress Connects described above and throughout this Complaint constitutes unfair trade practices under LUTPA. Such conduct offends established public policy and is immoral, unethical, oppressive, unscrupulous, and substantially injurious.

104.

Notice of this Complaint will be sent to the Attorney General pursuant to La. R.S. §51:1409(B) immediately upon filing.

105.

Therefore, Ring Street is entitled to treble damages under La. R.S. 51:1409 for any continued violations of LUTPA, as well as attorneys' fees.

31

**COUNT FOUR**
**(Against Beacher and Sauber)**
*Violation of Computer Fraud and Abuse Act*

106.

Ring Street repeats and re-alleges each and every allegation made in the previous paragraphs as if fully rewritten herein.

107.

In the days, weeks, and months both before and after their unexpected departures, Mr. Beacher and Mr. Sauber accessed, transferred, and/or misused proprietary information stored in Keeper Security, Ring Street's YMCS platform, and Share Point, *i.e.* information that is on Ring Street's network of electronically stored data.

108.

Neither Mr. Beacher nor Mr. Sauber were authorized, during their employment with Ring Street, to access and obtain this electronic information in order to retain it, disclose it, transfer it, and/or otherwise use it in competition against Ring Street.

109.

And, of course, neither Mr. Beacher nor Mr. Sauber were authorized, after their separation, to access and obtain this electronic information in order to use it in competition against Ring Street.

110.

By improperly accessing and/or transferring electronically-stored information housed in Ring Street's computing network, and, in some instances, by improperly deleting data, Mr. Beacher and Mr. Sauber knowingly, and with intent to harm Ring Street, accessed Ring Street's protected computer system without authorization and/or in excess of authorized access.

#101200336v20

111.

Ring Street incurred, and continues to incur, significant expenses in discovering and protecting the information improperly obtained, which have already exceeded $5,000 in a one-year period.

112.

Ring Street is thus entitled to all relief available under the CFAA.

**COUNT FIVE**
**(Against Beacher and Sauber)**
***Breach of Duty of Loyalty***

113.

Ring Street repeats and re-alleges each and every allegation made in the previous paragraphs as if fully rewritten herein.

114.

Mr. Beacher, as an Operations and Salesperson, was a highly trusted employee with significant responsibilities for Ring Street, and he owed duties to Ring Street including duties of loyalty and fair dealing.

115.

Mr. Sauber, as IT Directors, was also a highly trusted employee with significant responsibilities for Ring Street, and he, too, owed duties to Ring Street including duties of loyalty and fair dealing.

116.

Nevertheless, both prior to and after their resignations from Ring Street — and in violation of their statutory and common law duties — they accessed and used confidential information and

33

trade secrets from Ring Street's computing network, without authorization, to benefit themselves and Cypress Connects.

117.

Mr. Beacher and Mr. Sauber's deliberate efforts to conceal their plans to compete against Ring Street, while still employed by Ring Street, as well as their efforts to secretly misappropriate its protected information and conceal their wrongdoing, while employed by Ring Street and following their separations, demonstrate a concerning level of bad faith.

118.

Mr. Beacher and Mr. Sauber knowingly and intentionally — with the intent to benefit themselves at Ring Street's expense — breached their duties of loyalty and fair dealing to Ring Street, and Ring Street has sustained significant damages as a result of their actions. Accordingly, Ring Street seek damages from Mr. Beacher and Mr. Sauber for their breach of their common law duties to Ring Street.

## COUNT SIX
### (Against All Defendants)
### *Conversion*

119.

Ring Street repeats and re-alleges each and every allegation made in the previous paragraphs as if fully rewritten herein.

120.

Mr. Beacher and Mr. Sauber knowingly accessed Ring Street's computing systems and used information stored therein without Ring Street's authorization, knowledge, or consent, and, in doing so, they violated statutory and/or common law duties.

34

121.

The computing systems that Mr. Beacher and Mr. Sauber improperly accessed to misappropriate the information contained therein includes information that is confidential and proprietary but may not rise to the level of a trade secret.

122.

Mr. Beacher and Mr. Sauber transferred this confidential and proprietary information to Cypress Connects, and, on information and belief, copied and/or inputted it into documents that they have created and/or used while working on behalf of Cypress Connect.

123.

Upon information and belief, Mr. Beacher and Mr. Sauber have printed this information and/or stored it on external storage devices in their possession, custody, and/or control, and they continue to possess this information even though they know that it was taken from Ring Street without Ring Street's authorization, knowledge, or consent.

124.

Mr. Beacher, Mr. Sauber, and Cypress Connects are improperly using the confidential and proprietary information they misappropriated in order to compete against Ring Street.

125.

Ring Street seeks damages from Mr. Beacher, Mr. Sauber, and Cypress Connects for their unlawful acquisition, possession, and refusal to return the confidential and proprietary information that they improperly accessed, retained, and used following their resignations from Ring Street.

#101200336v20

**COUNT SEVEN**
**(Against All Defendants)**
*Unjust Enrichment*

126.

Ring Street repeats and re-alleges each and every allegation made in the previous paragraphs as if fully rewritten herein.

127.

Mr. Beacher and Mr. Sauber accessed, downloaded, uploaded, retained, disclosed, and/or transmitted Ring Street's confidential information and trade secrets without authorization and/or in a manner that exceeded authorization in direct violation of their common law and/or statutory obligations and to secure, for themselves and Cypress Connects, Ring Street's customer base, business strategies, pricing, and product information.

128.

Mr. Beacher, Mr. Sauber, and Cypress Connects have benefited and profited directly from their conspiracy to misappropriate Ring Street's confidential information and trade secrets.

129.

It would be unfair to allow Mr. Beacher, Mr. Sauber, and Cypress Connects to retain the enrichment they have unjustly received, and Ring Street would be damaged if they were not required to pay Ring Street damages for the wrongful possession and use of its confidential information and trade secrets.

#101200336v20

## COUNT EIGHT
### (Against All Defendants)
*Conspiracy*

130.

Ring Street repeats and re-alleges each and every allegation made in the previous paragraphs as if fully rewritten herein.

131.

Mr. Beacher and Mr. Sauber accessed, downloaded, uploaded, disclosed, retained, and/or transmitted Ring Street's confidential information and trade secrets with the specific and malicious intent to unfairly establish a competing entity and poach Ring Street's customer base.

132.

Mr. Beacher and Mr. Sauber misappropriated Ring Street's business strategies, pricing information, and knowledge of its customers' needs to unlawfully compete against Ring Street as employees, members, and owners of Cypress Connects, which is Ring Streets new direct competitor.

133.

Mr. Beacher and Mr. Sauber knew about—and encouraged—each other's unauthorized access of Ring Street's computing systems, the subsequent retention and misuse of information contained therein, as well as the joint plan to profit from this unethical conduct to benefit Cypress Connects.

#101200336v20

134.

Mr. Beacher and Mr. Sauber acted together to deceive Ring Street and conceal their plans to compete against, thereby allowing themselves more opportunity to misappropriate Ring Street's protected information and jump start a competing entity while still employed by Ring Street.

135.

Given the relationship between Mr. Beacher, Mr. Sauber, and Cypress Connects, not only did Cypress Connects allow itself to knowingly profit from Mr. Beacher and Mr. Sauber's unlawful misappropriation and deceptive trade practices, it also aided, abetted, and encouraged this unlawful competition with the specific intent of harming Ring Street and depriving Ring Street of its customers and competitive advantage.

136.

Thus, Cypress Connects conspired with Mr. Beacher and Mr. Sauber to commit the unlawful acts described and alleged herein to unlawfully compete against Ring Street and poach Ring Street's business for the benefit of Cypress Connects. Mr. Beacher, Mr. Sauber, and Cypress Connects are therefore liable for conspiracy to intentionally and unlawfully harm Ring Street.

137.

Pursuant to La. Civil Code art. 2324(A), Mr. Beacher, Mr. Sauber, and Cypress Connects are solidarily liable for any and all damages caused by these "intentional and willful" acts of conspiracy.

## **JURY DEMAND**

138.

Ring Street requests a jury trial.

38

## RELIEF SOUGHT

Ring Street requests a judgment in its favor, and against Mr. Beacher, Mr. Sauber, and Cypress Connects, awarding a temporary restraining order, preliminary and permanent injunctive relief, damages, and all other relief to which Ring Street is entitled in law and equity, including, but not limited to, attorneys' fees and penalties, whether provided by contract, common law, or statute, and the following relief:

1) Entry of a temporary restraining order enjoining Mr. Beacher, Mr. Sauber, and Cypress Connects, as well as all entities and persons acting in concert with them, from:

   a. Disclosing, disseminating or using Ring Street's trade secrets and confidential business information, including, but not limited to, all files (and the information contained therein) that reside on any electronic storage device, cloud-based file repository or file-sharing account, and/or email account used by Mr. Beacher and/or Mr. Sauber during their employment with Ring Street or that are otherwise in their possession, custody, or control during their employment with Ring Street;

   b. Accessing, studying, copying, or taking notes about Ring Street's trade secrets and confidential business information, including, but not limited to, all files (and the information contained therein) that reside on any electronic storage device, cloud-based file repository or file-sharing account, and/or email account used by Mr. Beacher and Mr. Sauber,  or otherwise in their possession, custody, or control;

39

c.  Destroying, altering, erasing, secreting, or failing to preserve any and all of Ring Street's trade secrets, business materials, property, proprietary information, confidential information, and/or any and all record or documents that may be relevant to this lawsuit; wherever located, and in whatever form, including but not limited to any document, email, report, software, files, electronic data, tangible evidence, financial records, and any and all communications between Mr. Sauber, Mr. Beacher and/or and any other employee, member, investor, or consultant of Cypress Connects;

d.  Failing to return the information and external storage devices identified in this *Verified Complaint*, and any other documents/devices that contain Ring Street's confidential business information; and

2)  Entry of an order that:

a.  grants Ring Street leave to commence expedited discovery immediately in aid of preliminary injunction proceedings before the Court;

b.  requires Defendants, within five days of the Temporary Restraining Order, to provide access to, for forensic imaging and inspection, any and all electronic devices and email accounts that may contain Ring Street's confidential, proprietary, and trade secret information, including, but not limited to, Mr. Beacher and Mr. Sauber's personal and work email accounts, any home and work computers, online web-based file sharing accounts (GoogleDrive, One Drive, DropBox, etc.), Blackberrys, iPhones, Android Phones, personal data assistants, memory devices, flash drives and other

40

electronic media storage devices, and any computing devices, accounts, and servers belonging to Cypress Connects or that Mr. Beacher and Mr. Sauber can access; and

    c.   requires Mr. Beacher and Mr. Sauber to appear for a limited deposition and for Defendants to answer limited written discovery; and

3) After a preliminary injunction hearing, an order enjoining Mr. Beacher, Mr. Sauber, Cypress Connects, and all entities and persons acting in concert with them, from the same activities set forth in the Temporary Restraining Order;

4) After due proceedings conclude, entry of a permanent injunction, an award of damages based on all the claims stated herein (actual, compensatory, exemplary, and punitive), other such damages as provided by applicable statute or contractual provision, including attorneys' fees, expert fees, costs, and penalties, and any other relief the Court deems appropriate.

                                Respectfully submitted on May 3, 2023.

                                */s/ Thomas P. Hubert*
                                THOMAS P. HUBERT (LA 19625)
                                MICHAEL A. FOLEY (LA 35774)
                                SAMANTHA SHEAR (LA 38402)
                                ***Jones Walker LLP***
                                201 St. Charles Avenue - 50th Floor
                                New Orleans, Louisiana  70170-5100
                                Telephone:  (504) 582-8000
                                Facsimile:  (504) 582-8015
                                Email: thubert@joneswalker.com
                                Email: mfoley@joneswalker.com
                                Email: sshear@joneswalker.com

                                ***Counsel for Plaintiff, Ring Street, LLC***

41